UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VEERASIKKU BOMMIASAMY, M.D., and V. BOMMIASAMY, M.D., S.C. an Illinois Corporation,<br>　　　　　Plaintiffs,<br><br>　　v.<br><br>RAKESH PARIKH, M.D.,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>) No. 12 C 7314<br>)<br>) Judge Rebecca R. Pallmeyer<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Veerasikku Bommiasamy, M.D. and his medical practice V. Bommiasamy, M.D., S.C., have brought a complaint to enforce a promissory note allegedly executed by Defendant, Rakesh Parikh, M.D. (hereinafter "Parikh" or "Defendant"). Defendant moves to dismiss the complaint [13] pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs' claims are barred under the doctrine of *res judicata* by a judgment rendered in a previous state court action. For the reasons explained below, Defendant's motion is denied.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are drawn from the pleadings and exhibits. Plaintiffs' claim arises out Parikh's alleged failure to satisfy the obligations on a promissory note executed in favor of Plaintiff, Veerasikku Bommiasamy, M.D. ("Bommiasamy"). (*See* Pl.'s Compl. [1].) The promissory note purports to memorialize an obligation to pay arising out of a stock purchase agreement. (*See* Promissory Note (hereinafter "Note"), Ex. B to Pl.'s Compl., ¶ 1.) On April 1, 2004, Parikh allegedly entered into an agreement to purchase all of the issued and outstanding shares of HealthCare Labs, Inc. ( "HCL") from sellers Bommiasamy, Wilmer Andrada, and Bradley Gates. (*See* Sale of Stock Agreement [23-3] (hereinafter "Stock Agreement"), Ex. C to Def.'s Reply, at 1.) In exchange for the HCL shares, Parikh agreed to pay the sellers $550,000.00, plus a percentage of the company's gross collections in the years 2004, 2005, and 2006, but reduced by the company's

outstanding debts and obligations, which Parikh agreed to satisfy. (*Id.* ¶¶ 2(a), 2(b).) The outstanding debts and obligations that Parikh agreed to satisfy are listed in Paragraph 2(b)(I) of the stock purchase agreement.[1] (*Id.* ¶ 2(b)(i).) Among those obligations is the requirement, set forth in paragraph 2(b)(i)(5), that "Purchaser shall also pay V. Bommiasamy, M.D. Three Thousand Dollars ($3,000.00) per month for the next sixty (60) months."[2] (*Id.* ¶ 2(b)(i)(5).) On April 5, 2004, four days after signing the stock purchase agreement, Parikh executed and delivered the aforementioned promissory note, in which Parikh promised to pay Bommiasamy $180,000.00 in sixty monthly installments of $3,000.00 beginning on May 15, 2004. (Pl.'s Compl. ¶ 5.) The promissory note states that it "formalizes the agreement of Paragraph 2(b)(i)(5) of the *Sale of Stock* dated _____, 2004." (Note ¶ 1.) (month and day absent in original). Plaintiffs allege in this action that Parikh has failed to make these installment payments. (Pl.'s Compl. ¶ 8.)

Plaintiffs' claim against Parikh was originally filed in Illinois state court. (Pl.'s Comp. ¶¶ 5, 7.) On May 24, 2005, Bommiasamy filed two complaints against Parikh in the Circuit Court for the Thirteenth Judicial Circuit of Illinois in La Salle County. (*See* Pl.'s Compls. Case Nos. 05 L 92 and 05 L 93 [13-1], Ex. 1 to Def.'s Mot. to Dismiss.) Parikh asserts that the two state court complaints are identical (Def.'s Mot. to Dismiss [13] at 2), but they are in fact anything but. In particular, the two complaints state inconsistent and confusing claims for relief: Bommiasamy's first complaint against Parikh, Case No. 05 L 92 ("State Complaint 1"), alleges breach of contract for Parikh's

---

[1] The obligations listed in paragraph 2(b)(I) include all the company's outstanding debts and obligations (Stock Agreement ¶ 2(b)(i)(3)), as well as expenses or debts Bommiasamy and Andrada incurred on behalf of HCL: $60,000.00 for credit card expenses Andrada incurred on behalf of the company (*Id.* ¶ 2(b)(i)(1)); $10,000.00 for payroll cash advances made by Bommiasamy (*Id.* ¶ 2(b)(i)(2)); assumption of a loan taken out by Andrada (*Id.* ¶ 2(b)(i)(4)); and sixty month installment payments of $3,000.00 to Bommiasamy. (*Id.* ¶ 2(b)(i)(5).)

[2] If the installment payments to Bommiasamy are intended to cover an expense or debt obligation he incurred on behalf of the company, in the nature of the other obligations listed in paragraph 2(b)(i), the nature of this particular expense or debt it is not specified anywhere in the stock purchase agreement. (*See* Stock Agreement.)

failure to pay the $550,000.00 for the HCL shares pursuant to the stock purchase agreement. (*See* Pl.'s Compl., Case No. 05 L 92.) The April 1, 2004 stock purchase agreement is attached as Exhibit A to State Complaint 1, but the complaint itself refers to the April 5, 2004 promissory note as Exhibit A. (*Id.* ¶¶ 1, 2, 10), and alleges that Parikh has failed to meet his obligation to pay Bommiasamy $3,000.00 for sixty months (totaling $180,000,00). (*Id.* ¶ 6.) State Complaint 1 also states that Bommiasamy was entitled to receive one-third ($183,333.33) of the $550,000.00 purchase price. (*Id.* ¶¶ 12-13.) State Complaint 1 suggests that the two aforementioned obligations are one and the same, in that it alleges that Bommiasamy suffered damages in the amount of $183,333.33 as a result of Parikh's "failure to make the payments as set forth above." (*Id.* ¶14.) State Complaint 1 concludes by requesting judgment in the amount of $550,000.00.[3] (*Id.* ¶ 15.)

In a second complaint also filed on May 24, 2005, Case No. 05 L 93 ("State Complaint 2"), Bommiasamy alleges two breach of contract counts. (*See* Pl.'s Compl., Case No. 05 L 93.) In Count I of State Complaint 2, Bommiasamy alleged that Parikh failed to make installment payments in accordance with the April 4, 2004 promissory note, which is attached to that complaint as Exhibit A. (*Id.* at 1-2.) Count II of State Complaint 2 alleges that Parikh failed to met yet another of the obligations listed in paragraph (2)(b)(i) of the stock purchase agreement, in which Parikh allegedly agreed to satisfy $10,000.00 in HCL payroll advances made by Bommiasamy. (*Id.* at 2-3.) The April 1, 2004 stock purchase agreement is attached to State Complaint 2 as Exhibit B. (*See Id.*)

On May 24, 2005, Bommiasamy filed a third complaint in the Circuit Court of La Salle County against Wilmer Andrada and Bradley Gates ("State Complaint 3"). In State Complaint 3,

---

[3] This is all the more perplexing because the stock purchase agreement attached states that Parikh was to pay $550,000.00, less a series of debts and obligations, among which were the sixty $3,000.00 installments to Bommiasamy. It was only the remaining balance of the $550,000.00 purchase price, after other the obligations were satisfied, that was to be split equally among each of the three sellers. (*See* Stock Agreement.)

Bommiasamy sought to recover for Andrada and Gates's breach of a July 2003 oral agreement in which Andrada and Gates allegedly agreed to pay Bommiasamy $180,000.00 in exchange for medical equipment. (*See* Pl.'s Compl. Case No. 05 L 91 [13-2], Ex. 2 to Def.'s Mot. to Dismiss.) Andrada had filed his own earlier lawsuit, Case No. 04 L 301, against Parikh in the Tenth Judicial Circuit of Illinois in Peoria County.[4] All three of Bommiasamy's La Salle County suits were transferred to Peoria County and consolidated with Case No. 04 L 301, Andrada's lawsuit against Parikh.

Andrada and Parikh subsequently filed motions for summary judgment on Bommiasamy's claims against them.[5] On August 17, 2010, the Circuit Court of Peoria County granted summary judgment in Andrada's favor based on a statute of frauds defense.[6] (*See* Summ. J. Order, Case No. 04 L 301 [13-3] (hereinafter "04 L 301 Summ. J. Order"), Ex. 3 to Def.'s Mot to Dismiss.) In the same order, the court denied Parikh's motion for summary judgment stating only: "There are issues of material fact as to the matters raised by the motion. For example, there is an issue as to whether the $180,000.00 note from Parikh is a 'stand alone' obligation, which has never been satisfied in any event." (*Id.* at 6.)

The remaining claims, including Bommiasamy's claims against Parikh, were scheduled for trial on July 25, 2011. In the meantime, however, Bommiasamy's relationship with his attorney broke down. On June 6, 2011, Bommiasamy's counsel moved to withdraw as attorney of record. (Def's Mot. to Dismiss at 4.) Bommiasamy objected to his attorney's motion, and on June 21, 2011,

---

[4] A copy of this complaint is not in the record before the court.

[5] Andrada and Parikh's motions for summary judgment in Case No. 04 L 301 are not in the record before the court.

[6] The court found that to enforce the agreement in the absence of a writing, Bommiasamy needed to show that Andrada accepted and received the equipment in his individual capacity. (04 L 301 Summ. J. Order at 2.) The court found that Bommiasamy had presented evidence of delivery only, and the court stated that "the April 1, 2004 agreement appears to address the transfer of the equipment from Bommiasamy to HealthCare Corporation." (*Id.* at 4.)

the Circuit Court of Peoria County denied it. (*Id.*) Bommiasamy's attorney, still counsel of record for Bommiasamy, then filed a motion to voluntarily dismiss the case on July 11, 2011, which was granted over Bommiasamy's objection on July 15, 2011. (*Id.*; Sept. 13, 2011 Order, Case No. 04 L 301, Ex. A to Pl.'s Compl.) Bommiasamy retained new counsel, and moved to vacate the voluntary dismissal, but the motion to vacate was denied on September 13, 2011. (See Sept. 13, 2011 Order.) On October 13, 2011, Bommiasamy appealed to the Appellate Court of Illinois, Third Judicial District, Case No. 3-110769, arguing that the Circuit Court had erred in granting, and refusing to vacate, the voluntary dismissal. (Def.'s Mot. to Dismiss at 4.) On September 12, 2012, with his state appeal pending, Bommiasamy filed the case before this court. (*Id.* at 5.) On December 11, 2012, the Illinois Appellate Court dismissed Bommiasamy's appeal for lack of jurisdiction.[7] *See Bommiasamy v. Parikh*, 2012 IL App (3d) 110769-U, at *4 (3d Dist. 2012) *appeal den.*, 985 N.E.2d 305 (Ill. 2013). Bommiasamy then filed a petition for leave to appeal to the Illinois Supreme Court, which was accepted on February 1, 2013 and was still pending when Parikh filed his motion to dismiss in this case. (Feb. 1, 2013 Illinois Supreme Court Order, Dkt. No. 115502, Ex. A to Pl.'s Resp. [17-2].) Bommiasamy's petition for leave to appeal was denied on March 27, 2013. *See Bommiasamy v. Parikh*, 985 N.E.2d 305 (Ill. 2013).

## DISCUSSION

Parikh has moved to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6). The standard for granting such a motion is familiar: "[a] motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of*

---

[7] The Illinois Appellate found that it lacked jurisdiction to hear Bommiasamy's appeal because "'an order of voluntary dismissal cannot be appealed by the plaintiff since he or she requested the order and thus is protected from prejudice by the statute of limitations which gives the plaintiff the absolute right to refile the action within one year of a voluntary dismissal without prejudice." *Bommiasamy*, 2012 IL App (3d) 110769-U, at *2, *appeal denied*, 985 N.E.2d 305 (Ill. 2013) (citing *Edward E. Gillen Co. v. City of Lake Forest*, 221 Ill. App. 3d 5, 9, 581 N.E.2d 739, 741 (2d Dist. 1991); *Kahle v. John Deere Co.,* 104 Ill. 2d 302, 306, 472 N.E.2d 787, 789 (Ill. 1984).

*Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Parikh contends that Plaintiffs' claim is barred by *res judicata*. The doctrine of *res judicata*, or claim preclusion, bars claims that were asserted or could have been asserted in a prior action. *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011). "It is true that res judicata is not one of the affirmative defenses that Rule 12(b) permits to be made by motion rather than in the answer to the complaint. But when an affirmative defense is disclosed in the complaint, it provides a proper basis for a Rule 12(b)(6) motion." *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008). Bommiasamy's prior suits were adjudicated in Illinois state court, so the court applies Illinois *res judicata* principles. *Chicago Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales Ltd.*, 664 F.3d 1075, 1079 (7th Cir. 2011) (citation omitted). Under those principles, subsequent litigation is barred where three elements exist: "(1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) [a new case presenting] the same cause of action, and (3) [involvement of] the same parties or their 'privies.'" *Id.* (citing *Hudson v. City of Chicago*, 228 Ill. 2d 462, 470, 889 N.E.2d 210, 215 (Ill. 2008)). As the procedural history presented above reflects, the first of these elements is not present here. There was no final judgment for the purposes of *res judicata* on Bommiasamy's claims against Parikh. The Circuit Court of Peoria County denied Parikh's motion for summary judgment on Bommiasamy's claims. Bommiasamy's claims were later voluntary dismissed without prejudice. No determination on the merits was made, and Bommiasamy had an absolute right to refile the action within one year of the voluntary dismissal. See *Bommiasamy*, 2012 IL App (3d) 110769-U.

Defendant nevertheless argues that the summary judgment ruling in favor of *Andrada* extinguished Bommiasamy's claim against *Parikh*, and that by filing the present action, Bommiasamy has attempted to engage in claim-splitting. (Def.'s Mot. to Dismiss at 7-8.) Parikh directs the court's attention to *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 665 N.E.2d 1199 (Ill. 1996), where the Supreme Court of Illinois explained that "[t]he rule against claim-splitting, which

is an aspect of the law of preclusion, prohibits a plaintiff from suing for part of a claim in one action and then suing for the remainder in another action." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 340, 665 N.E.2d 1199, 1206 (Ill. 1996). In that case, plaintiff bond purchasers brought suit against defendants in state court, alleging that defendants were guilty of fraudulent misrepresentation of the character of the bonds, and seeking rescission of purchases under state securities law, along with common-law fraud claims, breach of fiduciary duty, and failure to register securities. 172 Ill. 2d at 328-29, 665 N.E.2d at 1201-02. The state court dismissed the rescission counts and the plaintiffs later voluntarily dismissed the remaining counts. 172 Ill. 2d at 329-30, 665 N.E.2d at 1202. Almost two years later, the plaintiffs filed another complaint, alleging nearly identical rescission and common-law counts. 172 Ill. 2d at 330, 665 N.E.2d at 1203-03. The court determined that plaintiffs had "split their lawsuit into separate actions by dismissing the common law counts of their complaints, while attempting to litigate the rescission counts in *Rein I*, and then refiling both the common law and rescission counts in *Rein II*." 172 Ill. 2d at 340, 665 N.E.2d at 1207. Because the claims asserted in *Rein I* and *Rein II* were merely different theories of recovery arising from a single cause of action comprised of the same set of facts, the doctrine of *res judicata* barred the subsequent litigation. *Id.* In contrast with the situation in *Rein*, however, Bommiasamy here is not reasserting the same claims against the same defendant for whom there was a final judgment on the merits. It was Andrada who won a final judgment in the state court action. In this case, Bommiasamy is suing Parikh.

Parikh also relies on *Muhammad v. Oliver*, 547 F.3d 874 (7th Cir. 2008), in which the Seventh Circuit held that in cases with multiple defendants, "the extinction of the claim against one [defendant] extinguishes the plaintiff's claim against the [others defendants] if the claim against them arose out of the same facts as the first claim," and the "defendants are sought to be held liable for the identical conduct." *Id.* at 877. Parikh insists that Bommiasamy's complaint against him involves the same cause of action as Bommiasamy's claim against Andrada, which was

dismissed on summary judgment. (Def.'s Mot. to Dismiss at 8.) Again, the court disagrees. Illinois courts rely on the "transactional test" to determine whether there is an identity of causes of action for purposes of res judicata. *Lane v. Kalcheim,* 394 Ill. App. 3d 324, 332, 915 N.E.2d 93, 99 (1st Dist. 2009) (citation omitted). Under this test, "separate claims will be considered the same cause of action for *res judicata* purposes if they arise from a single group of operative facts, regardless of whether different theories of relief are asserted." 394 Ill. App. 3d at 332, 915 N.E.2d at 100. The transactional test allows "claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction." 394 Ill. App. 3d at 333, 915 N.E.2d at 100.

Parikh's argument hinges on his insistence that the claims alleged in Bommiasamy's state court action against Andrada and the complaint in this matter arise from the same transaction. Parikh claims that Bommiasamy's state court actions "against Andrada and Parikh aris[e] out of the same facts – the alleged sale of the same medical equipment to each individual as part of the same sale of stock transaction." (*Id.*) Parikh contends that Bommiasamy's suit against Andrada alleged that the same equipment was sold "prior to, or simultaneous with, the sale of the stock to Parikh." (*Id.* at 3.) As Parikh sees things, the promissory note represents payment for equipment owned by Bommiasamy that was purportedly sold as part of the sale of HCL stock. (*Id.* at 2.) As a result, Parikh concludes, Bommiasamy's federal case against Parikh presents the same cause of action as Bommiasamy's state court claim against Andrada. But no fair reading of the two complaints supports the conclusion that they involve the "sale of the same medical equipment to each individual as part of the same sale of stock transaction." (*Id.* at 8.) Bommiasamy's claim against Andrada was for breach of an oral agreement for the sale of medical equipment, which Bommiasamy alleged took place in July 2003. (Pl.'s Compl. Case No. 05 L 91 ¶¶ 1-2.) The complaint against Andrada made no mention of Parikh, the promissory note, or any sale of stock. By contrast, the complaint against Parikh before this court reasserts one of the claims Bommiasamy

8

had voluntarily dismissed in his state court action (State Complaint 1 and 2): that Parikh breached a promissory note executed approximately nine months after the alleged oral agreement between Andrada and Bommiasamy. (Pl.'s Compl. ¶ 6.) The complaint before this court makes no mention of Andrada, the July 2003 oral agreement, or any sale of medical equipment. Moreover, Bommiasamy does not seek to hold Parikh liable for the same conduct as Andrada. The promissory note itself makes no mention of a sale of medical equipment to Parikh, and instead purports to further memorialize an obligation set forth in a specific section of the stock purchase agreement. (*See* Note.) Bommiasamy's state court action against Andrada (State Complaint 3), on which Andrada prevailed, relates to an alleged oral agreement. This case refers to an entirely separate agreement that Bommiasamy allegedly entered into with a different individual, approximately nine months apart.

It may be that the installment payments referred to in paragraph 2(b)(i)(5) of the stock purchase agreement represent an obligation to pay Bommiasamy created by his alleged sale of medical equipment to Andrada in July of 2003. The court is unprepared to make such a factual determination at this stage, however. Even if it were, the state court's grant of summary judgment in favor of Andrada would not preclude a judgment against Parikh for breach of the April 2004 promissory note. The state court took this view, as it decided that Bommiasamy's claims against Parikh could proceed to trial in spite of its grant of summary judgment in favor of Andrada. The Peoria County Court's judgment in favor of Andrada rested on the statute of frauds. (*See* 04 L 301 Summ. J. Order.) Bommiasamy could overcome that defense, the court held, only by showing that Andrada had accepted and received the equipment in his individual capacity. (*Id.* at 2.) The court found that Bommiasamy had presented evidence of delivery, but that "the April 1, 2004 agreements appears to address the transfer of the equipment from Bommiasamy to HealthCare Corporation," not to Andrada. (*Id.* at 4.)

Parikh contends that this finding precludes any corresponding sale from Bommiasamy to

Parikh (Def.'s Mot. to Dismiss at 3), but again, the court disagrees. First, as explained above, the complaint before this court does not allege a sale of medical equipment to Parikh. Second, a finding that there is no evidence that Andrada received the medical equipment in his individual capacity in no way precludes a later transfer of that same equipment to another party. The Peoria County Court's statement that "the April 1, 2004 agreement appears to address the transfer of the equipment from Bommiasamy to HealthCare Corporation" suggests that Bommiasamy transferred the equipment to HCL, of which Andrada was a share holder, rather than to Andrada individually. (*Id.*) If this were the case, such a transfer would not preclude Parikh from later agreeing to satisfy the debt to Bommiasamy in the same way that the stock purchase agreement also calls for Parikh to pay the $10,000.00 in payroll cash advances made by Bommiasamy, and the $60,000.00 in credit card debts Andrada incurred. (*See* Stock Agreement ¶¶ 2(b)(i)(1)-(2).)

The court concludes that Plaintiff's claim as alleged in the present case, is a separate and distinct cause of action from Bommiasamy's state court claim against Andrada, and that these causes of action involve at least two separate transactions. Whether these allegations are true and correct is another matter that this court is not at liberty to decide at this stage. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009).

## **CONCLUSION**

For the reason's stated above, Defendant's motion to dismiss [13] is denied.

ENTER:

Dated: October 7, 2013

_____
REBECCA R. PALLMEYER
United States District Judge